Argued February 19, affirmed March 11, 1924.

R. M. WALKER ET AL. *v.* POLK COUNTY ET AL.

(223 Pac. 741.)

Highways—County Held Authorized to Issue Bonds for the Construction of Roads.

1. Where the amount of bonds issued for the construction of roads either singly or in the aggregate with previous debts incurred by the county for road purposes did not exceed two per cent of the assessed valuation of the property of the county, and the issuance and sale of the bonds had been approved by a majority of those voting upon that question at an election, *held* under Laws of 1913, page 170, the county, under Constitution, Article XI, Section 10, was authorized to issue and sell such bonds.

Highways—Statute Providing for Election to Authorize Bond Issue and Restricting Use of Money to County Roads Held Repealed in Part.

2. Laws of 1913, page 170, providing for elections to authorize bonds for road construction, and by Section 13, providing that all such money shall be used for constructing county roads, is not a legislative interpretation of Constitution, Article XI, Section 10, as limiting the power of the county to issue bonds for road construction to county roads, and is constructively repealed by Laws of 1917, pages 454–456,. Sections 7, 10, 13, and Laws of 1917, page 903, Section 10, but such implied repeal does not affect the provision for holding the election.

Constitutional Law — Statutes — Uniform Interpretation of Constitutional and Statutory Provisions by Legislature has Great Weight.

3. The uniform legislative interpretation of doubtful constitutional provisions, running through many years, and a similar construction of statutes, has great weight.

Statutes—Legislature may, by Enactment of Other Laws, Repeal Former Laws by Implication.

4. The legislature has power, without expressly repealing the provisions of a former law, to enact other laws upon the same subject which by implication necessarily operate to repeal the former law.

Statutes—When Implied Repeal Results from Subsequent Enactment Stated.

5. While repeals by implication are not favored, an implied repeal results from some enactment, the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act.

Counties—Burden of Proving Insufficient Description of Road in Order for Bond Election Rests on Taxpayers Alleging It.

6. The burden of proving that a description in an order calling a bond election of a road, upon which part of the proceeds raised from the sale of bonds is to be expended, is insufficient, in that there are numerous roads between the termini mentioned, rests on the taxpayers alleging it as a ground for enjoining the sale of the bonds.

Counties—Order Describing Road upon Which Proceeds of Bond Issue were to be Expended Held Sufficient.

7. Under Laws of 1913, page 171, Section 4, providing that the order calling an election to authorize the issuance of bonds for road construction shall specify the particular roads and the minimum amount to be expended thereon, an order describing termini between which was a road already established and in public use, and only one road which could answer to the description, *held* sufficient as no one was or could be misled by the description.

Counties—Order Reciting That Proposed Bond Issue for Road Construction Should Bear Interest not to Exceed Six Per Cent Held Sufficient.

8. Under Laws of 1913, page 171, Section 4 (now Section 4628, Or. L.), providing that the order of a County Court calling an election for the purpose of authorizing the issue of bonds for road construction shall state the maximum rate of interest that the bonds shall bear, an order reciting that the proposed bonds should bear interest at a rate not to exceed six per cent per annum was sufficient.

---

4. Repeal of statutes by implication, see notes in 14 Am. Dec. 209; 88 Am. St. Rep. 271.

See 12 C. J., p. 714; 15 C. J., pp. 612, 614, 617, 618; 36 Cyc. 1071, 1073, 1142.

From Polk: GEORGE R. BAGLEY, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Martin L. Pipes, Mr. D. E. Fletcher, Mr. John M. Pipes* and *Mr. George A. Pipes,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. Fletcher.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. J. M. Devers,* Assistant Attorney General, and *Mr. J. N. Helgerson,* District Attorney, with an oral argument by *Mr. Helgerson.*

RAND, J.—The plaintiffs, as taxpayers, sue to enjoin the sale of certain road bonds issued by Polk County for the purpose of raising money to be used for the construction and maintenance of permanent roads within that county.

It appears from the complaint that pursuant to Chapter 103, Laws of 1913, a petition was presented to the County Court of Polk County petitioning the County Court to call a special election to be held for the purpose of submitting to the voters of the county the question of the issuance by the county, for the construction and maintenance of permanent roads within the county, of bonds to the amount of $265,000, which bonds were to run for fifteen years and to bear interest at a rate not to exceed 6 per cent per annum. There is no allegation in the complaint that the petition was not signed by the requisite number of registered voters of the county, or that the amount of the proposed bond was in excess of the amount of bonds which the county was authorized to

issue for that purpose, or that the said petition was not sufficient in all respects. It is alleged that pursuant to this petition the County Court made and entered an order calling for the holding of a special election to be held on June 3, 1919; that an election was held in pursuance thereof, and that at said election a majority of the votes cast were in favor of the issuance of said bonds, and that the bonds have been issued by the county and are about to be sold. These bonds, it alleges, are invalid for the reasons hereinafter stated.

1. Section 10 of Article XI of the Constitution, until amended, limited the power of counties to create any debts or liabilities which should singly or in the aggregate exceed the sum of $5,000, except to suppress insurrection or repel invasion. This constitutional provision remained in force until amended in 1910. It was again amended in 1912. As so amended and in force at the date of the entry of the order complained of, it provided:

"No county shall create any debts or liabilities which shall singly or in the aggregate with previous debts or liabilities, exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion or to build and maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate with previous debts and liabilities incurred for that purpose exceed two per cent of the assessed valuation of all the property in the county." See Laws 1913, p. 9.

It is conceded that the amount of the bonds in question, either singly or in the aggregate with previous debts and liabilities incurred by Polk County for road purposes, did not exceed 2 per cent of the assessed valuation of the property of the county, and

that at an election authorized by and held pursuant to Chapter 103, Laws of 1913, the issuance and sale of these bonds has received the approval of a majority of those voting upon that question at said election. Under this admitted state of facts, Polk County, by virtue of said constitutional provision and of the provisions of Chapter 103, Laws of 1913, was authorized to issue and sell bonds to the amount of $265,000 for the purpose of providing money to be used in building and maintaining permanent roads within that county.

2–5. But it is contended that the County Court of Polk County had no lawful authority to call an election to authorize a bond issue where a part of the proceeds arising from the sale of the proposed bonds is to be used in the construction of a state highway. It is admitted that the sum of $40,000 to be realized from the sale of said bonds is to be used in the construction of what is known as the West Side Pacific Highway, which is a state highway. For this reason it is contended that the order calling the election and the election held in pursuance thereof are void. This contention is based upon the fact that Section 13 of Chapter 103, Laws of 1913, provides:

"All moneys raised under the provisions of this act shall be used in constructing permanent public roads in that county, which roads shall be constructed by the County Court under its exclusive jurisdiction and such expert assistants as they may employ."

Chapter 103, Laws of 1913, provides the procedure whereby an election may be called and held for the purpose of authorizing a county to issue and sell bonds to build and maintain permanent roads within the county. Plaintiffs contend that said act is a legislative interpretation of Section 10, Article XI,

of the Constitution, to the effect that the power of the county to issue bonds to build and maintain permanent roads is limited and restricted to county roads within the county, and that the county is without authority to issue and sell bonds for the purpose of raising any money which is to be expended upon a state highway. "The uniform legislative interpretation of doubtful constitutional provisions, running through many years, and a similar construction of statutes, has great weight." 2 Lewis' Sutherland on Statutory Construction, § 476. Chapter 103, Laws of 1913, is purely a legislative act. It has none of the characteristics of a constitutional provision. Like all other legislative acts where vested rights, growing out of a statute and arising upon contract or transactions in the nature of a contract, have not intervened, that is, if no constitutional provision prohibits it, subsequent legislatures have the power to amend, revise or repeal all or any of its provisions. The legislative assembly also has power, without expressly repealing the provisions of a former law, to enact other laws upon the same subject which by implication necessarily operate to repeal the former law. We think that Section 13, Chapter 103, Laws of 1913, furnishes no evidence whatever of any legislative interpretation of Section 10 of Article XI, Constitution, but if any such interpretation can be found in it, it can be claimed with equal force that a contrary legislative interpretation may be found in subsequent legislation upon the same subject.

Section 7 of Chapter 237, Laws of 1917, provides:

"Whenever any county desires to construct or improve any part of a state road lying within such county, the county court of such county may make application to the State Highway Commission for the definite location and grade for such road, and the

State Highway Engineer shall cause such road or portion thereof to be definitely located and the grade thereof established, and the cost thereof shall be charged to such road on the books of the State Highway Department as a part of the cost of construction.''

Section 10 of the same chapter provides:

''All construction work done by counties upon any of the State highways to which the State contributes not less than twenty-five per cent of the cost of construction shall be subject to the supervision of the State Highway Department. All moneys raised by counties for road purposes, and expended or to be expended upon roads within such counties other than State Highways, shall be under the exclusive control of the county court of such counties. Nothing in this Act contained shall be construed so as to prohibit the county from co-operating with the Federal Government under Section 8 of the Federal Aid Road Act for the construction and maintenance of roads in or partially within the National forests. No part of the State Highway Fund shall be expended upon other than State highways.''

And Section 13 provides:

''The State Highway Commission is hereby authorized to enter into co-operative agreements and undertaking with any county for the survey, construction, improvement, reconstruction, repair or maintenance of any State highway or part thereof upon such basis of contribution as may be agreed upon between them; provided, however, that any amounts or sums as individual counties have acquired through the issue of bonds and expended since May 1, 1913, on roads that are now or may hereafter be designated as State roads, or sections thereof, shall be considered and treated as having been contributed by such county under any co-operative agreement hereafter entered into between the State and the county.''

Section 10 of Chapter 423, Laws of 1917, also provides:

"The State Highway Commission is hereby author-
ized, empowered and directed whenever the county
through which any portion of said hard-surfaced
roads may be located, shall have constructed all or
any section of any such hard-surfaced roads in ac-
cordance with plans and specifications prepared by the
State Highway Commission, along routes prescribed
by said commission, and shall have provided for
suitable drainage of said roads in accordance with
the requirements of said commission, and shall have
prepared the foundation in accordance with the re-
quirements of said commission, then said commission
shall let contracts, or otherwise provide according to
law for the completion of said hard-surfaced roads,
by causing said roads to be finished and hard-sur-
faced according to plans and specifications prepared
by said commission, and the fund required therefor
shall be derived from the sale of said bonds, pro-
vided for in Section 3 hereof."

While repeals by implication are not favored, "an
implied repeal results from some enactment the terms
and necessary operation of which cannot be harmon-
ized with the terms and necessary effect of an earlier
act. In such case the later law prevails as the last
expression of the legislative will; therefore, the
former law is constructively repealed, since it cannot
be supposed that the law-making power intends to
enact or continue in force laws which are contradic-
tions. The repugnancy being ascertained, the later
act or provision in date or position has full force,
and displaces by repeal whatever in the precedent law
is inconsistent with it." 1 Lewis' Sutherland on
Statutory Construction, § 247.

Hence those provisions of Section 13 of Chapter
103 which are so inconsistent with the later statutes
that they cannot be harmonized therewith are con-
structively repealed by the later acts because of their
repugnancy, but this implied repeal does not in any

way affect those provisions which provide for the holding of an election or any of the other provisions of the act not so repealed.

6, 7. The next objection urged against the validity of the bonds is made to the sufficiency of the order in its description of one of the permanent roads within the county upon which a part of the money to be raised from the sale of the bonds is to be expended. The order describes eleven different roads. The first one referred to in the order and the amount to be expended thereon is described and stated in the order in these words:

"$40,000.00 shall be expended on the road from a point 18 chains east and 18 chains north from the southwest corner of Section 5, T. 6, S. R. 4 W. of the W. M., on the line between Polk and Yamhill County, State of Oregon, to a point 15.48 chains south and 30 chains west from the southeast corner of Section 6, T. 10, S. R. 4 W. of the W. M., on the line between Polk and Benton County, State of Oregon."

As to this description the complaint alleges "That it does not describe what particular roads within the county between the said point on the Yamhill-Polk County line and the point on the Benton-Polk County line are to be built or improved by the money so raised, nor where the said road is located within the said county, or give the beginning or the terminus thereof in the said county." The complaint further alleges that between the said points there are numerous road districts and numerous established county roads, and that it is impossible to determine from the language of the order upon which of said established county roads the money is to be expended or the route over which the road between said points is to follow.

The burden of proving these allegations rested with

the plaintiffs. Instead of the testimony showing the facts to be as alleged it clearly shows that between the two terminal points which are tied to government section corners, there is a county road extending in a straight line from the north to the south line of Polk County running through the towns of Richreall and Monmouth, and that there is but one road between said points, that this road is a county road which was established and has been in use ever since early territorial days and is now a part of the West Side Pacific Highway. The testimony established and the trial judge found that there exists in Polk County no other highway or road within the jurisdiction of that county with its beginning point at either of said designated points; that this road runs practically in a continuous straight line between said points. The statute (§ 4, Chap. 103, Laws 1913) requires that the order to be made and entered by the County Court calling the election, shall specify "what particular roads within the county are to be built and improved by the money so raised and the minimum amount to be expended on each road and where located within the county, giving the beginning and the terminus thereof." As the road was already established and in public use and there was only one road which could answer to the description, the order contained all of the information necessary to describe the particular road upon which it was recited that the sum of $40,-000 was to be expended. The order, therefore, furnished to the voters of that county full and complete information of the particular road upon which the money was to be expended, and there is no allegation or proof that anyone was misled thereby. As the order substantially complied with the requirements of the statute, and no one was or could be misled by the

description of the road, we think the same was sufficient: *Clark* v. *Hood River County,* 73 Or. 336 (143 Pac. 897).

8. Another ground of objection is that the rate of interest the bonds were to bear is not fixed in the order. Section 4 of Chapter 103, Laws of 1913 (now § 4628, Or. L.), prescribes that the order of the County Court "shall state the amount of the proposed bond of indebtedness and the maximum rate of interest that it shall bear." The order which is set forth *in haec verba* in the complaint recites that the proposed bonds shall "bear interest at a rate not to exceed 6 per cent per annum." It is not the rate of interest but the maximum rate of interest which the statute requires the order to specify. While the order does not follow the precise wording or phraseology of the statute, it substantially complies with the requirements of the statute. The statement in the order that the rate of interest shall not exceed 6 per cent per annum is equivalent to a statement that the maximum rate of interest shall be 6 per cent per annum. The order in that respect, therefore, was sufficient: See Abbott on Public Securities, §§ 127, 128.

We find no merit in any of the other contentions urged, and therefore conclude that the order of the County Court was a valid order and that the election held pursuant to said order was a valid election, and from this it follows that the decree appealed from must be affirmed.                      AFFIRMED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.